[Civ. No. 1397. Fourth Appellate District.—April 25, 1935.]

ASSOCIATED INDEMNITY CORPORATION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JAMES CAGLE et al., Respondents.

R. O. Purvis and Varnum Paul for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

BARNARD, P. J.—The petitioner, who was the insurance carrier for Assets Corporation, seeks to annul an award of the respondent commission in favor of the respondent Cagle.

The respondent Briscoe was the owner of two ranches in Fresno County situated about one-eighth of a mile apart,

one consisting of 120 acres, which will be hereinafter referred to as parcel 1, and the other of 20 acres which will hereinafter be referred to as parcel 2. The Security-First National Bank of Los Angeles held a trust deed covering parcel 1 but was not interested in parcel 2. Some two or three years before the time here in question Briscoe, being in default on this trust deed, made an arrangement with the bank whereby the management and control of parcel 1 was turned over to the Assets Corporation, a company with which the bank had a working agreement for the purpose of handling and operating a large number of farms which had been taken over by it. Under this arrangement the Assets Corporation paid all the expenses of farming parcel 1 with the understanding that the proceeds therefrom should be applied first to the repayment of the sums thus advanced and then to reduce the amount of Briscoe's other indebtedness to the bank.

Briscoe was employed by the Assets Corporation as foreman on parcel 1 at a salary of $100 per month, and was under the direct supervision of a "field man" employed by that corporation and under the indirect supervision of its higher officials. Briscoe owned a team of mules which was kept on parcel 1 and mainly used thereon although occasionally used by him on parcel 2. On a few occasions when they were not otherwise needed these mules were loaned by Briscoe to neighbors for use on their ranches. The cost of feeding these mules was charged as one of the expenses of farming parcel 1 and later, during some two years, Briscoe took hay which he had raised on parcel 2 and hauled the same to parcel 1 where it was used in feeding the mules. During these two years, with the knowledge and consent of the officers and agents of the Assets Corporation, he took its employees from parcel 1 and used them to cut the hay on parcel 2 and later to haul the same to parcel 1. At such times the wages of these men were paid by the Assets Corporation and no charge was made for the hay by Briscoe as any saving thus effected inured to his benefit in reducing his indebtedness.

In April, 1934, Briscoe used certain of these employees of the Assets Corporation in hauling some material from parcel 2 to parcel 1 which was used in erecting a tool shed thereon. About the same time he took certain of the employees of the Assets Corporation, including the respondent

Cagle, over to parcel 2 and used them in enlarging a barn thereon, to be used for storing the hay which he intended to later haul to parcel 1 for the purpose of feeding the mules. While the men were thus engaged in building this barn on parcel 2 a scaffolding broke and Cagle was injured. This injury led to the award here in question.

The only point raised is that there is no evidence to support the finding of the respondent commission that Cagle was employed by the Assets Corporation at the time of his injury. The petitioner contends that while Briscoe was an agent of the Assets Corporation in connection with parcel 1 he was acting entirely on his own behalf in connection with anything done on parcel 2, and that since Cagle was injured while building a barn on parcel 2, he was at the time an employee of Briscoe and not of the Assets Corporation.

While Briscoe apparently failed to keep the affairs of the two ranches as separate and distinct as might be desired, we think there is sufficient evidence to sustain the finding complained of. It clearly appears that Briscoe had been in the habit of taking men from parcel 1 to cut the hay on parcel 2 and to haul the same to parcel 1, where it was used to feed mules which were mainly used upon that ranch, that the Assets Corporation knew of this custom and had consented thereto and that it paid the wages of the men so used. The use of this hay reduced by so much the amount which the Assets Corporation was obligated to advance. Cagle had been on the payroll of the Assets Corporation and regularly employed on parcel 1 for some seven months before the accident. Briscoe was foreman on that ranch with the right to employ and discharge men, and while he received instructions from his superiors he alone gave orders to the men as to what work was to be done. On the day of the accident several men who were engaged in irrigating and hoeing vines on parcel 1, including Cagle, were taken by Briscoe to parcel 2 and directed to assist in putting a roof on the barn. Within an hour thereafter the accident occurred. The time of these men for that day, including the time spent working on the barn, was turned in to the Assets Corporation by Briscoe and their wages were paid by that corporation as on former occasions when such men had been taken to cut and haul the hay raised on parcel 2. Cagle was employed by and was on the payroll of the Assets Corporation, he was subject to the orders of its foreman Briscoe,

and he was directed to do the work in question by that foreman. He was taken for that work at an odd hour in the middle of the morning while he was working on parcel 1. The immediate purpose of the work on the barn was to protect the hay which was to be used on parcel 1 and, notwithstanding the fact that the improvement would add something to the value of parcel 2, it was also of benefit to the work being done on parcel 1. Not only did Briscoe have full authority to direct the operations of these employees, but the evidence sufficiently indicates that the building of the barn on parcel 2 for the purpose mentioned was authorized by the field manager of the Assets Corporation. One of the field managers of the Assets Corporation testified that Briscoe had the right to hire men and to do anything that would be an advantage to parcel 1. Briscoe testified that he talked over the matter of building a tool shed on parcel 1 and a barn on parcel 2 with another field manager for the Assets Corporation and that this manager told him it would be all right for him to use the men from parcel 1 on the job on parcel 2 and charge the expense to the Assets Corporation. This manager testified that Briscoe told him that he had arranged with the other manager to bring hay from parcel 2 over to parcel 1 and to take men from parcel 1 over to parcel 2 in return for the hay and that he told Briscoe he thought this would be fair. There is evidence of a conversation between Briscoe and a field manager for the corporation in which Briscoe told the field manager he wanted to build both the tool house on parcel 1 and the barn on parcel 2. The only inference reasonably to be drawn from this conversation is that the manager knew and understood that Briscoe intended to use these employees for a day or two in building the barn, and that the manager consented to this. While the evidence is conflicting in some respects and not too satisfactory in others, taken as a whole, with the reasonable inferences therefrom, it supports the finding made.

For the reasons given the award is affirmed.

Marks, J., and Jennings, J., concurred.